Jacob Berg and Evelyn Zwick, Individually and as Representatives of All Licensed Motorists Residing in the City of Chicago, a Class, Plaintiffs-Appellants, v. City of Chicago, a Municipal Corporation, Joseph J. McDonough, Clerk of the Circuit Court of Cook County, and Hon. William G. Clark, Attorney General, State of Illinois, Defendants-Appellees.

Consolidated With

Jacob Berg, George Wojcik, Raymond Wickert, Daniel Anschel and Nathan Fishman, Individually and as Representatives of All Licensed Operators of Motor Vehicles Residing in Cook County, Illinois, a Class, Plaintiffs-Appellants, v. City of Chicago, a Municipal Corporation, and Joseph J. McDonough, Clerk of the Circuit Court of Cook County, and as Successor in Office of the Clerk of the Municipal Court of Chicago, Defendants-Appellees.

Gen. No. 50,804.

First District, Fourth Division.

June 19, 1968.

Rehearing denied July 17, 1968.

L. Louis Karton and Harold Z. Kaplan, of Chicago, for appellants.

Raymond F. Simon, Corporation Counsel of City of Chicago, of Chicago (Sydney R. Drebin and Marvin E. Aspen, Assistant Corporation Counsel), of counsel and Daniel P. Ward, State's Attorney of Cook County, of Chicago (Ronald Butler, Assistant State's Attorney, of counsel), for appellees.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This is an appeal from an order entered by the Circuit Court of Cook County on June 25, 1965, dismissing plaintiffs' class actions. Defendants have filed a cross-appeal from an order overruling their motion to dismiss the individual complaints. Two separate actions were brought by plaintiffs in their own behalf and on behalf of others similarly situated. The suits were consolidated over plaintiffs' objections. We will consider the suits separately.

The complaint in the first action was filed by Jacob Berg and Evelyn Zwick, residents of Chicago, citizens of Illinois, and motorists licensed by the State of Illinois, on behalf of themselves and as representatives on behalf of all other persons similarly situated, as a class, and claims against the City of Chicago, a municipal corporation, and Joseph J. McDonough, Clerk of the Circuit Court of Cook County, Illinois, and alleges that the City of Chicago enacted chapter 27 of its ordinances which consist of 437 traffic regulations, which result in more than one million prosecutions, excluding parking violations, in each year since 1961; the vast majority are against resident motorists of Chicago.

The complaint further alleges that the appendix attached to the complaint shows the ordinances, their statutory counterparts, and the conflicting statutory enactments, and that all the ordinances there set forth are null and void by reason of no power vested in the City of Chicago to enact them; that the effect of ordinance enforcement in the City of Chicago invokes prosecution under civil rules of procedure in violation of the uniformity requirements of section 122 of the UART.

It is further alleged that the plaintiffs, Berg and Zwick, have been arrested by the police of the defendant City at least four times in the last sixteen months, charged with violating 27–255 and 27–202 of the traffic

regulations, and that they have a direct and immediate interest in the outcome of this controversy for themselves and as representatives of the class. Plaintiffs Berg and Zwick appeared in the Municipal Court branch of the Circuit Court on May 13, 1964, and filed counterclaims raising the issue that the City was without power to enact the ordinances. The City had the counterclaims dismissed, and in the complaint the statement is made that the City did, in order to frustrate a legal determination of the issues raised, move for a nonsuit in both cases.

While it is not crystal clear whether or not the two original suits have been dismissed, there is no further reference made as to any suit against Berg. It does appear, however, that a suit (W2 243–958) brought against Evelyn Zwick, in her maiden name, charging her with violating one of the ordinances involved, was dismissed for want of prosecution on December 20, 1965. The defendant was present in court.

The complaint prays that

> a) An interim declaratory order be entered on the Clerk of the Circuit Court and the City of Chicago that all fines collected by them (re the Traffic Regulations scheduled in the appendix) are declared to be paid under protest and subject to repayment to the payors upon final disposition of this cause, if plaintiffs shall prevail;
>
> . . . . . .
>
> e) The court declare null and void all the Traffic Regulations set forth in the appendix attached.

On September 4, 1964, after consolidation of the cases, the defendants filed a motion to dismiss the suits on the ground that the court has no jurisdiction to review or collaterally attack the judgment of the Municipal Court of Chicago; that a class action under such facts and cir-

cumstances as are presented here does not lie, and equity will not act where the remedy at law is adequate and such action will restrain the enforcement of the ordinances in question. The plaintiffs moved to vacate the order of consolidation. On May 11, 1965, the court entered an order denying plaintiffs' motion and also denying defendants' motion to dismiss the complaints; the defendants were ordered to file an answer to the complaints within 30 days. The defendants thereupon filed a motion to vacate the order denying the motion to dismiss the complaints and moved the court to reconsider and to allow said motion. Suggestions in support of the motion were filed and an answer was filed thereto. On June 25, 1965, an order was entered which stated in part:

"It is hereby ordered that the order of the Court of May 11, 1965, denying the motion of defendants to dismiss the complaints in the consolidated causes herein and requiring defendants to answer within 30 days is vacated and held for naught.

"It is further ordered that the motion of defendants to dismiss the complaints as to the class action in the consolidated causes herein is allowed.

"It is further ordered that the class action of the plaintiffs be dismissed and judgment is hereby entered for the defendants in regard to these class actions with their costs wrongfully sustained.

"It is further ordered that the motion of defendants to dismiss the complaints as regarding the individual plaintiffs, in their individual capacity is denied and that defendants answer individual plaintiffs' complaint within 30 days.

"It is further ordered that, plaintiffs electing to stand upon their complaints, the Court finds that there is no just reason for delaying an appeal as

regards the decision herein and the appeal bond of the plaintiffs is set at the sum of $500.00."

The plaintiffs took the instant appeal from this order. The defendants took a cross-appeal from the order of the court refusing to dismiss the individual complaints.

As we have said, we will now consider the first action. In their reply brief filed in this court the plaintiffs say, concerning the first action:

> "The ordinance case, when filed, simply challenged the validity of multiple traffic ordinances. In order to preserve the rights of plaintiffs and the class to a refund of fine monies paid *thereafter* (as a result of conviction of ordinances held later to be invalid), an interim protective order was sought, but was denied.
>
> ". . . If the ordinances are invalid, plaintiffs' asserted right to refunds attached to the judgments as they were rendered. The judgments entered were conditional on the validity of the ordinances."

It is necessary to interpret the statute authorizing declaratory judgments (Ill Rev Stats 1961, c 110, § 57.1 (1), (2)).

> (1) No action or proceeding in any court of record is open to objection on the ground that a merely declaratory judgment, decree or order is sought thereby. *The court may, in cases of actual controversy,* make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, . . . . The court shall refuse to enter a declaratory judgment, decree or order, if it appears that the judgment, decree or order, *would not terminate the controversy or some part thereof, giving rise to the proceeding.* (Emphasis added.)

415

■■■■■■■■

(2) Subject to rules, declarations of rights, as herein provided for, *may be obtained* by means of a pleading seeking that relief alone, or as incident to or part of a complaint, counterclaim or other pleading seeking other relief as well, . . . . (Emphasis added.)

In 22 Am Jur2d, Declaratory Judgments, § 27, it is stated:

In order for a controversy as to a statute or ordinance to justify declaratory relief, it must include a right claimed by one party and denied by the other, and not merely a question as to the abstract meaning or validity of the statute or ordinance.

. . . . . .

In a declaratory judgment proceeding challenging the constitutionality of a statute, the plaintiff must have an interest in the statute, special or peculiar to him, and not merely an interest in common with the public generally.

In 22 Am Jur2d, Declaratory Judgments, § 24, it is stated:

A declaratory judgment is not available to restrain the enforcement of a criminal prosecution where the facts are in dispute, or open to different interpretations. A declaratory judgment proceeding is particularly inappropriate where a criminal action involving the identical question is already pending.

■■ Declaratory judgments were unknown at common law and were created by statute. The statute is to be liberally construed but its provisions are to be strictly complied with. In order for this court to obtain jurisdiction to enter a declaratory judgment on the rights

416

in question, it is incumbent upon the plaintiffs to demonstrate that such a judgment would be based upon an actual justiciable controversy. If the plaintiffs will suffer an infringement of their rights and be adversely affected thereby only in the event that some future possibility in fact occurs or does not occur, then the right in question is speculative and a declaratory judgment cannot be entered. Plaintiffs are not entitled to declaratory relief in the absence of a justiciable controversy unless they can show not only that the ordinance is invalid, but also that they have sustained or are immediately in danger of sustaining some immediate injury as a result of its enforcement.

In the Annotations, 174 ALR, page 554 it is stated:

> The fact that a statute or ordinance may be applicable to rights or interests of a person at some future time does not give such person sufficient standing to challenge the validity of the statute or ordinance in a declaratory judgment action.

The same rule is laid down in Saline Branch Drain. Dist. v. Urbana-Champaign Sanitary Dist., 399 Ill 189, 77 NE2d 158; and in Exchange Nat. Bank of Chicago v. County of Cook, 6 Ill2d 419, at 421, 129 NE2d 1, the court said:

> "The section of the Practice Act authorizing the use of declaratory judgment procedures provides, in part, as follows: '. . . the court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, . . . .' We have repeatedly held that such provision does not authorize the court to grant declarations of rights involving mere abstract propositions of law without regard to the interest of the parties, and that before a declaration of rights may be made there must be an actual controversy. . . ."

417

In Exchange Nat. Bank of Chicago v. County of Cook, supra, the court quotes with approval from Aetna Life Ins. Co. v. Haworth, 300 US 227:

> "The word 'actual' is one of emphasis rather than of definition. . . . A 'controversy' in this sense must be one that is appropriate for judicial determination. . . . A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . ."

In State Farm Mut. Automobile Ins. Co. v. Morris, 29 Ill App2d 451, 173 NE2d 590, the court held that the existence of another adequate remedy is a bar to declaratory action and the complaint or petition therefor should under those circumstances be dismissed. The court further pointed out that the declaratory judgment procedure is not intended to permit litigation of moot or hypothetical cases, or to enable parties to secure advisory opinions or legal advice from the court with respect to anticipated future difficulties. The court said at page 460:

> "There is little danger of such a result for the court is vested by the statute with discretion to decline to award declaratory relief in any case. In appropriate cases the desirability of avoiding piecemeal litigation will serve as a proper and sound basis upon which to exercise that discretion. The granting or denying of declaratory relief even when the controversy or some part thereof will be settled thereby is discretionary with the court. It is provided in the second sentence of subsection (1) that the court *'may, in cases of actual controversy, make binding declarations of rights.' The statute, by its terms, is permissive:* Kitt v. Chicago (1953) 415 Ill 246, 112 NE2d 607. The granting of declaratory relief is clearly

within the discretion of the trial court, and dismissal of the action on the defendant's motion is an appropriate judicial method of declining to grant declaratory relief and is within the Court's discretion to do: Wolf v. Solem (1960) 26 Ill App2d 262, 167 NE2d 820. Even though the statute be broad enough to authorize the entry of a declaratory judgment, the Courts have a discretion as to whether they will enter a declaratory judgment: Goodyear Tire & Rubber Co., Inc. v. Tierney (1952) 411 Ill 421, 104 NE2d 222. The discretion is not one to entertain the action but to enter or decline to enter the judgment or decree. See: Historical and Practice Notes, Ch 110 Smith-Hurd Ill Ann Stats, par 57.1." (Emphasis added.)

Also see Atkinson v. Board of Education of Chicago, 44 Ill App2d 92, 194 NE2d 8; People ex rel. County of St. Clair v. Reinhardt, 51 Ill App2d 110, 201 NE2d 4; and Spalding v. City of Granite City, 415 Ill 274, 113 NE2d 567, in which latter case it is held that only in cases of actual controversy the court may proceed under the declaratory judgment statute.

 Without determining whether or not the existence of complaints in the instant case against Berg or Zwick in another division of the Circuit Court would be sufficient to authorize the entry of a declaratory judgment of this character, we must pass upon the effect of a dismissal of the complaint against Zwick which appears to be the only one alive when the court entered its order. That complaint was dismissed after the decision of the trial court and while the case was pending in this court. It has been repeatedly held that a moot case cannot in any way support the entry of a declaratory judgment with regard to future rights.

In LaSalle Nat. Bank v. City of Chicago, 3 Ill2d 375, 378, 121 NE2d 486, the court said:

"Plaintiffs have moved to dismiss the appeal on the ground that the case is now moot. A supporting affidavit states that on February 9, 1954, after the entry of the judgment below, the city of Chicago issued its license to Kenmore, Inc., to operate a nursing home at the location in question. A photostatic copy of the license is attached to the motion. The intervenors have filed counter-suggestions to the motion to dismiss, arguing that the case has not become moot, and that even if it has, the appeal should not be dismissed.

"A case is moot when it does not involve any actual controversy. (Chicago City Bank and Trust Co. v. Board of Education, 386 Ill 508.) Where the issues involved in the trial court no longer exist, an appellate court will not review a case merely to decide moot or abstract questions, to establish a precedent, or to determine the right to, or the liability for, costs, or, in effect, to render a judgment to guide potential future litigation. (Siefferman v. Johnson, 406 Ill 392; Central States Import and Export Corp. v. Illinois Liquor Control Com. 405 Ill 58; Railway Express Agency, Inc. v. Commerce Com. 374 Ill 151; Chaitlen v. Kaspar American State Bank, 372 Ill 83; People ex rel. Lawrence v. Village of Oak Park, 356 Ill 154; People ex rel. Chancellor v. Sweitzer, 329 Ill 380; Wick v. Chicago Telephone Co. 277 Ill 338.) *Since the existence of a real controversy is an essential requisite to appellate jurisdiction,* the general rule is that where a reviewing court has notice of facts which show that only moot questions or mere abstract propositions are involved, it will dismiss the appeal or writ of error even though such facts do not appear in the record. (Siefferman v. Johnson, 406 Ill 392; Tuttle v. Gunderson, 341 Ill 36; Chaitlen v. Kaspar American State Bank, 372 Ill 83; Kimball v. Kimball, 174 US

158.) From the necessity of the situation courts allow facts which affect their right and duty to proceed in the exercise of their appellate jurisdiction, but which do not appear in the record before it, to be proved by extrinsic evidence." (Emphasis added.)

Under the rules of law which we have heretofore discussed, the plaintiffs as representatives of the class now have no standing in court on their complaint in the first case, since there was no justiciable controversy between the parties. Whatever controversy there was was eliminated when the suit against Zwick was dismissed. In the present status of the case it is incumbent upon the court to dismiss the suit as to the class.

The second case, brought on behalf of individuals and as representatives of the class which had already paid fines for traffic violations during the last five years, specifically raises the question as to whether either the individuals or the class can recover these fines. In 70 CJS, Payment, § 156, it is stated:

"a. *In General.* Except where it is provided otherwise by statute, it is generally held that, where one under a mistake of law, or in ignorance of law, but with full knowledge of all the facts, and in the absence of fraud or improper conduct on the part of the payee, voluntarily and without compulsion pays money on a demand not legally enforceable against him, he cannot recover it back.

". . .

"c. . . . Money paid under an unconstitutional or invalid statute or ordinance, without any circumstances of compulsion is paid under a mistake of law, and so cannot be recovered except in so far as recovery is permitted under the rule adopted in most states that payments made by public officers under mistake of law are recoverable."

In 17 McQuillin, Municipal Corporations, § 49.62, the rule is also laid down that recovery cannot be had for payment to a municipality when it is voluntarily made. In 40 Am Jur, Payment, § 170, it is also held that where a judgment is reversed, it is then a nullity, and the matter stands as if no judgment had ever been rendered, and consequently, the money not having been paid under mistake of law by the person, it may be recovered; and in § 220 it is stated:

> But, in accordance with the established rule already discussed, it appears to be well settled that money voluntarily paid as a fine, with knowledge of the facts, cannot be recovered, and the rule that money paid under a mistake of law, with full knowledge of the facts, is not recoverable unless the payment was induced by the fraud or imposition or the undue advantage of the one receiving it, or was made under duress, has been applied. It has been held that the payment is voluntary, and therefore irrecoverable, where, at the time of payment of a fine imposed, the accused has an option to pay the fine or to appeal, and he chooses to do the former, even though he subsequently appeals, and the conviction, upon review, is set aside. (Anno: 26 ALR 1529) Likewise, it seems that a convicted person may, in proper circumstances, be estopped from recovering an illegal fine or penalty. Carver v. United States, 111 US 609, 28 L Ed 540, 4 S Ct 561.

In Prilliman v. City of Canon City, 146 Colo 159, 360 P2d 812, a suit was brought by a motorist to recover from the city a fine he had paid for driving while intoxicated in violation of a city ordinance, which ordinance was subsequently held to be void. The defendant had entered a plea of guilty and paid the fine. The court said: "A voluntary payment of a fine assessed pursuant to an unlawful or void ordinance cannot be recovered, either

from the municipality or from the officer of such municipality to whom it was paid." The general rule as set forth in 70 CJS, Payment, § 156(c) was cited. Also see Rice v. Tuscaloosa County, 240 Ala 4, 198 So 245; and City of Miami v. Keton (Fla), 115 So2d 547 (1959).

There is no case directly in point on this subject in Illinois; however, in Mills v. Cook County Forest Preserve Dist., 345 Ill 503, 178 NE 126, the court held at page 512:

> "It is well established that money unlawfully demanded under claim of authority and not under any mistake of fact may not be recovered unless paid under such pressure as to interfere with the free enjoyment of rights of person or property, and such compulsion must furnish the motive for the payment sought to be avoided. Proof that one party is under no legal obligation to pay the money and that the other has no right to receive it is of no consequence unless the payment was compulsory, in the sense of depriving the one making it of the exercise of his free will. (Illinois Glass Co. v. Chicago Telephone Co., 234 Ill 535.)"

In Mills v. Cook County Forest Preserve Dist., supra, the court held that it was a mistake of law and the money could not be recovered. See also International Milling Co. v. Illinois Doughnut & Cake Co., 320 Ill App 332, 50 NE2d 851, which is in accord with the general rule.

In 26 ALR Annotations, page 1523 (Ferguson v. Butler County, 297 Mo 20, 247 SW 795, a Missouri case decided in 1923), at page 1529 it is stated:

> 2. *As affected by option to appeal.*
>
> It has been held that the payment is voluntary, and therefore irrecoverable, where, at the time of payment of a fine imposed, the accused has an option to pay the fine or to appeal, and he chooses

to do the former, even though he subsequently appeals, and the conviction, upon review, is set aside. D'Aloia v. Summit (1916) 89 NJL 154, 97 Atl 722, affirmed in (1916) 89 NJL 711, 99 Atl 189. At the time of the payment of the fines in this case, the defendants were under arrest, upon complaint for violation of a city ordinance, having been sentenced to pay fines or serve time in jail. No protest was made against payment of the fines. The court said that the legal idea of duress consists in forcing a person to act against his will, and does not exist where the person upon whom it is charged it has been exercised has an option or choice as to whether he will do the thing or perform the act said to have been done under duress; that in this case there were two forms of appeal available to the defendants as alternatives to paying the fines, and that it seemed to be the rule that if defendants have an alternative to making the payments, they must be regarded as having been voluntary, and therefore not recoverable.

The proposition that if one upon whom a fine is imposed by a court having no jurisdiction to try the offense or impose the fine has an alternative to pay the fine or to appeal, and payment is not essential to avoid threatened imprisonment, a payment with knowledge of the facts will be deemed voluntary, and the money cannot be recovered, is supported also by Harrington v. New York (1903) 40 Misc 165, 81 NY Supp 667.

Harrington was a case (Annotations: 26 ALR 1527)

. . . where a fine was imposed by a city magistrate who was without jurisdiction to try the offense or to impose the fine, and the accused acquiesced therein and paid the fine without appealing, as he might have done, and without, so far as appears,

424

protesting against payment. In this case it was not alleged that the accused was under arrest, or that there was any direction for his imprisonment in case the fine was not paid, and it was not alleged that any attempt was made to enforce payment. The court said that even were the accused actually under unlawful arrest at the time the payment was made, it would be necessary to allege that the payment was procured by reason of such detention. And the mere allegation that payment was made because of a fine imposed was held not to aver duress in fact.

█ In the case before us there is no allegation that any appeals were taken from the judgments complained of. Consequently, we must hold that the fines were paid under a mistake of law and not under duress. The plaintiffs as representatives of the class have no standing in court in the second case.

The question of the consolidation of the suits will not be discussed, as under this decision it has become a moot matter.

The order of the trial court dismissing the suits as class suits is affirmed.

The order of the chancellor denying defendants' motion to dismiss the complaints as to the individual plaintiffs is not a final judgment. It is therefore not appealable, and the order's inclusion of the language from section 50(2) of the Civil Practice Act does not make it so. Ill Rev Stats 1965, c 110, § 50(2) (now Supreme Court Rule 304) ; Harris Trust & Savings Bank v. Briskin Mfg. Co., 63 Ill App2d 12, 211 NE2d 32; Davis v. Childers, 33 Ill2d 297, 211 NE2d 264. The cross-appeal of defendants is dismissed.

Affirmed in part, dismissed in part.

DRUCKER, J., concurs.

ENGLISH, J., specially concurring:

I should like to make clear the nature of the two suits which were consolidated by the trial court:

> The first complaint asked for a declaratory judgment that Chicago's traffic ordinances were invalid because in conflict with the limitations on its authority in this field, as set forth in the pertinent statute. Ill Rev Stats (1963), c 95½, §§ 122 and 123. This complaint sought only prospective relief— namely, the sequestration and refund of fines thereafter paid for violation of these ordinances during pendency of the litigation.

> The second complaint concerned traffic fines paid prior to January 1, 1964, on traffic ticket complaints which were issued in the name of the People of the State of Illinois rather than in the name of the City of Chicago, in violation of both the constitution (art VI, § 33) and the Municipal Code of 1961 (c 24, § 1–2–7). It was alleged that all judgments based thereon were void, and plaintiffs sought refund of all such fines paid during the prior five-year period.

> In each complaint plaintiffs sued on behalf of themselves individually and as representatives of a class consisting of all persons licensed by the State of Illinois to operate motor vehicles, being residents of Chicago in the first suit and of Cook County in the second.

By the order appealed from, the chancellor made his decision clear that each complaint stated a cause of action as to the plaintiffs in their individual capacities. And he made it equally clear that he intended to dismiss the parts of the complaints in which plaintiffs alleged that they were suing on behalf of a class.

Consistent with this decision of the chancellor, plaintiffs in this court raise only one basic point—that the

![black redaction bar]

court erred in dismissing the class actions. (They also contend that the cases should not have been consolidated. With this I agree, but under the circumstances the point is of no consequence.) Therefore, except in a minor and incidental way, the only point on which we have been briefed by plaintiffs is on the question of class actions. Defendants devote a few pages in responding to this point, but the major part of the brief deals with their proposition that the relief sought by plaintiffs constitutes an unauthorized collateral attack on valid, existing judgments. Here, the parties are squarely at issue since plaintiffs claim that the judgments in question are open to such attack because of their being completely void under this court's decision in City of Chicago v. Berg, 48 Ill App2d 251, 199 NE2d 49.

Now, it is apparent that this last-mentioned point of contention can have nothing to do with the first suit which only questions the validity of the traffic ordinances, and does not purport to attack judgments, void or otherwise. So the one arena in which the parties have drawn a general battle line is precisely the area in which the trial court made its decision. But our majority opinion does not cover that issue and makes no decision on the propriety of class actions under the circumstances set forth in the two complaints. Instead, it sustains the chancellor's dismissal of the first complaint as having been justified by this court's interpretation of the declaratory judgment statute, and it affirms as to the second complaint on the theory of irrecoverability of voluntary fine payments, absent any allegations of duress.*

---

* The opinion also states that it is based upon the lack of an allegation that the fine judgments had been appealed. This seems unrealistic, since if all had been appealed and reversed the suit would not have been brought, and if all had been appealed and affirmed there would be no basis for plaintiffs' contention that the judgments are void. Plaintiffs do, of course, rely on the fact that one of the judgments was appealed and held to be void in the Berg case, supra.

427

In my view, we should not base our decision on either of the points which form the basis for the majority opinion, partly because we have not been briefed on them and therefore might be missing something which the able counsel on both sides of this case might call to our attention, but more importantly because they are not issues which were raised in the trial court. I am mindful of the broad rule that while an appellant is limited on review by his assignment of errors at trial, an appellee is free to support the judgment by arguments which the record may indicate were not in the mind of the trial judge at the time or were not accepted by him as grounds for the judgment. I believe, however, that this rule must be precisely held within the bounds of the issues raised by the pleadings, or, as stated by the Supreme Court, "an appellee may sustain the lower court decree by any argument *based upon issues appearing in the record.*" (Emphasis supplied.) In re Estate of Leichtenberg, 7 Ill2d 545, 549, 131 NE2d 487. See also Consoer, Townsend & Associates v. Addis, 37 Ill App2d 105, 110, 185 NE2d 97.

Section 45 of the Practice Act requires that alleged defects in a complaint be pointed out specifically, and that was done by defendants in this case. Ill Rev Stats (1965), c 110, § 45(1). They did not, however, raise in this manner the points on which the majority opinion is grounded. Nor, as I have mentioned, did they argue these points in this court. It follows, therefore, that defendants, even though appellees, would not be entitled to have the judgment reviewed on those grounds. Admiral Oasis Hotel Corp. v. Home Gas Industries, Inc., 68 Ill App2d 297, 216 NE2d 282; Lango v. Division Paint & Garden Supply Co., 75 Ill App2d 384, 221 NE2d 47. And it then follows, I should think, that we ought not to base our decision thereon.

I would uphold the chancellor's decision that neither complaint presents a proper class action under the circum-

stances. Also, as to the first suit I would hold that the City's traffic ordinances are not in conflict with the statute, and as to the second suit I would hold that the rule of the Berg case, supra, should not be applied to the extent of making all the unappealed, satisfied traffic judgments subject to collateral attack. Thus, I concur in the majority's decision to affirm the trial court in its dismissal of both complaints in so far as they allege class actions.

I also concur in the decision to dismiss defendants' cross-appeal.